**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| PASSION FOR RESTAURANTS, INC., *Petitioner*, v. VILLA PIZZA, LLC, *Respondent*. | Civil No.: 20-15790 (KSH) (CLW) **OPINION** |

**Katharine S. Hayden, U.S.D.J.**

I. **Introduction**

This matter comes before the Court on the petition and motion to compel arbitration filed by petitioner Passion for Restaurants, Inc. (D.E. 18)[1] and the cross-motion to dismiss filed by respondent Villa Pizza, LLC (D.E. 19).  For the reasons set forth below, the petition and motion to compel arbitration will be denied and the cross-motion to dismiss will be granted.

II. **Background**

This action arises out of a franchise relationship between Villa, the franchisor, and Passion, the franchisee; Villa's purported representations that Passion could properly use certain brands or marks; the lawsuit Passion later faced from a third party claiming entitlement to the marks; and an arbitration between Passion and Villa that was terminated after the arbitrator's deposit requirement was not met.

Passion asserts that pursuant to a series of agreements between the parties in 2012 and

---

[1] The petition refers to petitioner as "Passion for Restaurants, SAE," and as "registered as a Joint Stock Company pursuant to Egyptian law." (D.E. 18, Petition at 1.)  But in filing this action, it identified itself in the CM/ECF system as "Passion for Restaurants, Inc.," which is also reflected in the caption of its reply brief (the only submission on which it included a caption).

early 2013, Passion paid Villa more than $150,000 in franchise fees for around a dozen locations in Egypt.  The parties "specifically agreed that Passion would have the right to use 'Villa Italian Kitchen,' a brand or mark that was ostensibly owned by [Villa]," and which two of the agreements indicated that it owned.  (D.E. 18, Petition at 1.)[2]  Passion alleges that Villa did not actually own the mark until July 5, 2013, when it settled a trademark infringement lawsuit brought against it in Egypt by a person named Mohammed Abdelattif and received a waiver, as of that date, of Abdelattif's right to use marks containing "Villa."  Passion further alleges that it was not aware of this litigation or the settlement until Abdelattif sued it, alleging it improperly used the "Villa" marks and claiming that any franchise fees paid before July 5, 2013 should have been paid to him.  Although Villa "repeatedly" (Petition at 3) assured Passion it would represent the latter's interests in the lawsuit, it ultimately failed to do so, leading Passion to settle with Abdelattif in December 2018 for $250,000.

The parties' agreements provide for arbitration in the event of a dispute.  The so-called "area development agreement" provides in relevant part as follows:

> Upon written notice to all parties, all controversies, disputes, or claims arising between Franchisor, any of its affiliates or any of its respective officers, directors, agents, employees and attorneys and Area Developer, any of its affiliates or any of its respective owners, arising out of or related to the relationship of the parties hereto or this Agreement (the "Dispute") shall be settled by binding arbitration in accordance with the then-current UNCITRAL[3] Arbitration Rules, in New York, New York, USA.  Such arbitration proceedings shall be conducted in the English language by one (1) neutral arbitrator appointed by the CPR Institute for Dispute Resolution.  This provision shall be governed by, and enforced in accordance with the United States Arbitration Act (9 U.S.C. §§ 1-16) (the "Federal Arbitration Act").  The arbitration proceedings shall be conducted on an individual basis and not on a multi-plaintiff, consolidated or

---

[2] Passion docketed its initial filing as a petition for the issuance of letters rogatory, though in substance it sought to compel arbitration.  (*See* D.E. 1.)  Magistrate Judge Waldor directed Passion to re-file its submission correctly and terminated the motion seeking dismissal of the original submission. (D.E. 15.)  This opinion is directed to the updated, operative filings.
[3] United Nations Commission on International Trade Law.

2

> class wide basis.
>
> The arbitrator shall be bound by, and shall strictly enforce the terms of this Agreement in accordance with the internal laws of the State of New York, USA, and shall not limit, expand or otherwise modify its terms. The arbitrator shall have sole authority to resolve any and all issues as to the arbitrability of any Dispute, including the application or running of any statute of limitations and all questions involving issue preclusion. . . .

(D.E. 20, Pet'r Reply, Ex. B § 11.5.)[4] The agreement also provides for sharing of the costs of arbitration on an initial basis, with reimbursement to the prevailing party at the end of the proceedings:

> The parties initially shall share all fees and costs of the arbitrator in any arbitration proceeding conducted pursuant to Section 11.5 of this Agreement, but at the conclusion of such arbitration proceeding, the prevailing party shall be entitled to be reimbursed by the losing party for all such fees and costs. Further, the party prevailing in any arbitration proceeding between the parties hereto shall be awarded its costs and expenses, including reasonable legal fees.

(*Id.*, § 11.7.) The franchise agreement contains a materially identical arbitration provision (*see* Pet'r Reply, Ex. C § 43(e)) and also provides for an initial sharing of arbitration costs, subject to later reimbursement (*id.* § 43(f)).

Although the parties characterize the ensuing events differently, they agree on the basic sequence of what happened. In June 2019, Passion initiated arbitration against Villa before the

---

[4] Passion attaches copies of the area development and franchise agreements to its reply brief, unaccompanied by any certification attesting to their veracity. But Villa does not challenge the authenticity of these exhibits and their contents (specifically the provisions relating to arbitration) are the linchpin of Passion's claim that arbitration must be compelled; they are also explicitly relied on and excerpted in the petition. The Court will therefore consider them to the extent permissible under Fed. R. Civ. P. 12(b)(6). *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (on a Rule 12(b)(6) motion, the Court may properly consider documents "'integral to or explicitly relied upon in the complaint,' and '"undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document'" (citations omitted)); *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004) ("In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").

CPR Institute for Dispute Resolution. After initial submissions from both sides and a January 2020 preliminary hearing, the arbitrator requested a $10,000 initial deposit. Passion paid its half, but Villa ultimately declined to pay the balance, citing a potential bankruptcy filing and business issues relating to the emergence of the COVID-19 pandemic. Ultimately, the arbitrator advised the parties that she would terminate the proceedings absent payment of the remaining half of the deposit. Her June 23, 2020 letter to the parties' attorneys summarized the proceedings to that point:

> As you are aware, on January 13, 2020, a prehearing conference was held in the above-referenced arbitration, at which certain preliminary discovery dates were addressed and the hearing of the matter was scheduled for May 6, 7, and 8, 2020. It was further agreed that the prehearing order would be issued after receipt of the Arbitrator's initial deposit for fees and compensation.
>
> On January 14, 2020, I prepared the terms of the arbitrator's appointment requesting that the initial deposit of $10,000 be wired to my trust account. $5,000 of the deposit was to be paid by the Claimant [Passion] and $5,000 of the deposit was to be paid by the Respondent [Villa]. From January 16, 2020 until approximately February 19, 2020, [Passion] made several request[s] to delay making the initial deposit, with the deposit having finally been made by the [Passion] and received by the Arbitrator on March 13, 2020.

(D.E. 19-2, Kasolas Decl., Ex. A.)[5] The letter went on to describe the arbitrator's requests to Villa's counsel for payment of its share of the initial deposit, which had been unsuccessful:

> On January 21, 2020, I spoke with . . . [Villa's] counsel, regarding the initial deposit to be made by [Villa]. [He] confirmed that [Villa] would make its deposit once [Passion] made its deposit. On March 13, 2020, I informed [Villa's counsel] . . . that I had received the deposit from [Passion] and requested that [Villa] make its deposit.
>
> In the interim, a global pandemic has occurred throughout the world and has halted most business operations and legal proceedings.
>
> On April 1, 2020, after numerous email requests to [Villa's counsel] for [Villa] to make its initial deposit and not having received a response, I spoke to [Villa's

---

[5] Passion's petition references, but does not attach, this communication from the arbitrator. (Petition at 5.) Villa attached it to the attorney declaration accompanying its motion to dismiss, and Passion does not dispute its authenticity. The Court will therefore consider it.

> attorney], who indicated that its client may not be proceeding with the arbitration but he would advise me definitively in two weeks.
>
> As of today [*i.e.*, June 23, 2020], despite my attempts, I have not heard from either [of Villa's two attorneys], nor have I received an email from either counsel in response to my several requests to have a conference call with the parties in an effort to get this matter back on track as business activities start to resume in the wake of the pandemic.

(*Id.*) The letter concluded by inviting Passion to pay the remaining half of the deposit in order for the arbitration to proceed:

> Accordingly, pursuant to Rule 43 of the UNCITRAL Arbitration Rules, I am advising the parties that the required $5,000 initial deposit required to be paid by [Villa] has not been paid in order that [Passion] may consider whether it wants to make the required additional payment of $5,000 and proceed with the arbitration. If payment is not made by July 23, 2020, I will order the termination of the arbitral proceedings.

(*Id.*) Article 43 of the UNCITRAL Arbitration Rules permits the arbitrator to request that the parties deposit an equal amount as an advance for certain costs and to request "supplementary deposits" during the course of the proceedings. UNCITRAL Arb. Rules Art. 43(1)-(2). It also provides as follows:

> If the required deposits are not paid in full within 30 days after the receipt of the request, the arbitral tribunal shall so inform the parties in order that one or more of them may make the required payment. If such payment is not made, the arbitral tribunal may order the suspension or termination of the arbitral proceedings.

*Id.*, Art. 43(4).

Passion responded to the arbitrator's June 23 letter by requesting that she conduct a default hearing under Article 30 of the UNCITRAL rules or, alternatively, return its deposit so that it could pursue the matter in court. (Kasolas Decl., Ex. C.)[6] Passion's letter also stated that

---

[6] This submission is, like the June 23 letter, referenced in but not attached to the petition. It is, however, attached to the cross-motion to dismiss and Passion does not dispute its authenticity.

5

it was "unable to make any additional payments at this time." (*Id.*)  For its part, Villa appears to have claimed several times that it would not make the payment because it was considering filing for bankruptcy (*see* Kasolas Decl., Ex. A, F), although there is no indication that it ever did so.

Ultimately, the arbitrator dismissed the arbitration.  (Kasolas Decl., Ex. F.)[7]  After setting forth the history of the proceedings and the deposit issue – noting that Villa had initially stated it would pay after Passion did, then failed to respond after being informed that Passion had paid, then suggested it may not proceed with arbitration at all due to the prospect of a bankruptcy filing, and, ultimately, declined to make the payment – the dismissal order provided as follows.

1. This arbitration proceeding is hereby dismissed and . . . Claimant make [sic] seek any remedies available to it under applicable law, including Section 4 of the Federal Arbitration Act; and

2. Claimant and Respondent shall each be responsible for one-half of the compensation of the Arbitrator for services rendered to date in the amount of $3,800.  The amount due from Claimant ($1,900) shall be deducted from the initial deposit made by Claimant and the balance shall be returned to Claimant.  Respondent shall provide its share of the Arbitrator's compensation ($1,900) to the Arbitrator no later than August 17, 2020.

(*Id.*)

Passion filed the action now before this Court, seeking an order compelling arbitration under 9 U.S.C. § 4 in accordance with the parties' agreements.  Villa has moved to dismiss the petition, arguing that arbitration already happened and was terminated due to Passion's own failure to pay the remaining fee to the arbitrator, making Passion "exclusively responsible for the arbitration not proceeding." (D.E. 19-1, Cross-Mot. Br. 3.)  Arguing that Passion is not an aggrieved party entitled to seek arbitration under 9 U.S.C. § 4, Villa characterizes the arbitrator's

---

[7] The arbitrator's original order is dated August 7, 2020.  (Kasolas Decl., Ex. E.) Three days later, on August 10, 2020, she issued an amended order of dismissal, which provided that it "replaces and supersedes in its entirety" the original order. (*Id.*, Ex. F.)  This opinion references the amended order.

6

June 23 letter as a "directive" to Passion to pay that it failed to comply with.  (*Id.* at 4, 5.)

Passion counters that the arbitration "only ended due to [Villa's] non-compliance and failure to respond," including its failure, contrary to the parties' agreements, to pay its half of the deposit, as well as its failure to communicate with the arbitrator, and that it is now "attempting to benefit from its own malfeasance" in seeking to dismiss the petition.  (Pet'r Reply 6, 11.)

### III. Standard of Review

Passion has moved to compel arbitration and Villa has cross-moved to dismiss under Fed. R. Civ. P. 12(b)(6).  When, as here, a motion to compel arbitration is based on a pleading facially establishing that the parties agreed to arbitrate, the Rule 12(b)(6) standard also governs whether arbitration will be compelled.  *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) ("[W]hen it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." (citation omitted)).  Under this standard, the plaintiff's factual allegations are taken as true, and the scope of the Court's review is limited to the complaint, exhibits attached to it, matters of public record, and undisputedly authentic documents upon which the claims are based.  *Id.* at 772.[8]  For arbitration to be compelled, there

---

[8] In fact, the Court is "accept as true the factual allegations in the complaint and draw all reasonable inferences in favor of the party opposing arbitration." *MZM Constr. Co., Inc. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 395 (3d Cir. 2020) (citing *Guidotti*, 716 F.3d at 772).  Often, the plaintiff is the party opposing arbitration, as it has brought the action in court and wants to keep it there, while the defendant is seeking to have the dispute resolved out of court and in arbitration.  In this case, it is petitioner Passion who seeks to have the parties return to arbitration, and respondent Villa contends that the petition must be dismissed because Passion lacks grounds to compel such a return to arbitration.  Because the parties agree on the facts, and, as discussed below, differ simply on their legal implications, there is no need for inferences to be drawn in either direction with respect to factual allegations.

7

must be an agreement to arbitrate and the dispute must fall within that agreement's scope. *ACE Am. Ins. Co. v. Guerriero*, 738 F. App'x 72, 77 (3d Cir. 2018) (citing *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009)).

## IV.  Discussion

Section 4 of the Federal Arbitration Act provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.  There is no dispute here that an arbitration agreement exists, that it is enforceable and binds the parties, and that it encompasses the underlying dispute.  The question is how § 4 applies in the scenario where arbitration *was* initiated and the parties did participate in it, but the proceeding was terminated before decision because the arbitrator's fee requirement was not met.

Neither party offered any authority addressing this scenario.  The Court observes that the Ninth Circuit dealt with this precise situation in *Lifescan, Inc. v. Premier Diabetic Services, Inc.*, 363 F.3d 1010 (9th Cir. 2004).  A dispute arose between Lifescan, a supplier of diabetic products, and Premier, a reseller of such products, and pursuant to their contract, they submitted it to arbitration.  After participating in the initial stages of the arbitration process, Premier provided notice that it could no longer pay its share of the arbitrators' estimated fees and costs.  The arbitrators then gave Lifescan the opportunity to advance Premier's share of the fees so the final hearings could take place.  Lifescan declined and asked the arbitrators to proceed while barring Premier from presenting evidence.  The arbitrators declined and suspended the arbitration proceedings, prompting Lifescan to file a petition under 9 U.S.C. § 4 before the

8

district court seeking to compel arbitration and for an order directing Premier to pay its share of the fees. The district court granted the petition, concluding that Premier's nonpayment was a "failure, neglect, or refusal" to arbitrate under § 4.

On appeal, the Ninth Circuit reversed, observing that arbitration may only be compelled in accordance with the terms of the parties' arbitration agreement. The agreement between Lifescan and Premier provided for arbitration that would be governed by the rules of the American Arbitration Association (AAA); the parties "thus incorporated the AAA Rules into their agreement." *Id.* at 1012. The AAA rules gave the arbitrators discretion and flexibility, including as to the allocation of fees, and permitted them to require deposits from the parties. In the Premier-Lifescan arbitration, the panel concluded, the arbitrators exercised the discretion afforded them by the AAA rules "by allowing the arbitration to proceed on the condition that Lifescan advance the remaining fees." *Id.* at 1012-13. Despite the potential for unfairness, this was a permissible step for the arbitrators to take:

> This may not be an ideal solution to the problem of a party's failure to pay its share of the fees, but it is well within the discretion of the arbitrators. There is, of course, no totally satisfactory solution in such circumstances, which is doubtless why the AAA rules give arbitrators the flexibility to make the best of a bad situation. . . . Under the terms of the FAA, there was no "failure, neglect, or refusal" by Premier to arbitrate in this case; the arbitration has proceeded pursuant to the parties' agreement and the rules they incorporated.

*Id.* at 1013. Because the arbitrators were "well within their discretion" in suspending the proceedings after Lifescan declined to advance Premier's share of the required fees, the panel reversed and remanded for dismissal of Lifescan's petition to compel arbitration. *Id.*

Here, Villa and Passion contracted for arbitration that would be governed by the UNCITRAL Arbitration Rules, which vest discretion in the arbitrator to determine how to allocate the costs of the arbitration and allow the arbitrator to request deposits from the parties.

9

*See* UNCITRAL Arb. Rules Art. 42 (addressing allocation of costs); Art. 43 (addressing deposits of costs).  The rules specifically provide that the arbitrator "may request the parties to deposit an equal amount as an advance for" costs, as well as supplemental deposits during the course of the proceedings, and, in the passage the arbitrator cited in her correspondence to Passion and Villa, they expressly allow the arbitrator to do what was done here: notify the parties that a deposit required has not been paid so that one or more of the parties can make up the difference, at penalty of suspension or termination of the proceedings if the deposit still goes unpaid.  UNCITRAL Arb. Rules Art. 43(4).  As the panel in *Lifescan* reasoned, when the parties incorporated those arbitration rules into their agreement, they incorporated the discretion those rules provide the arbitrator.  The arbitrator simply exercised that discretion here to reach a result that the UNCITRAL arbitration rules permit.  The ultimate result, however unfortunate for Passion (which wanted to continue arbitrating), rewarded Villa for its nonpayment, but while "not . . . an ideal solution to the problem of a party's failure to pay its share of the fees," it was squarely within the arbitrator's discretion and relief is not warranted under 9 U.S.C. § 4.  *See Lifescan*, 363 F.3d at 1013.  To hold otherwise would intrude on procedural matters that are the prerogative of the arbitrator in the first instance. *See, e.g.*, *Wolf v. Nissan Motor Acceptance Corp.*, 2015 WL 733237, at *4 (D.N.J. Feb. 20, 2015) (Hillman, J.) (suggesting that questions relating to payment of fees are procedural matters presumptively up to the arbitrator).

      The Court's conclusion does not preclude Passion from doing what it told the arbitrator it would do if she declined its request to conduct a default proceeding: "pursue this matter in a Court of proper jurisdiction." (Kasolas Decl., Ex. C.)  It simply leaves closed the door the arbitrator closed when Passion declined to pay Villa's share of the deposit.  To borrow from

*Lifescan*, the UNCITRAL rules gave the arbitrator here "the flexibility to make the best of a bad situation" and the Court will not disturb her exercise of discretion.

### V. Conclusion

For the reasons set forth above, the petition and motion to compel arbitration are denied. The cross-motion to dismiss is granted. An appropriate order will issue.

Date: December 30, 2022

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.